**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS**

| | |
|---|---|
| CHESTER ALDRIDGE; MELVIN AMERSON;            ) | |
| RODNEY ASKEW; JAMES AUSTIN;                  ) | |
| JULIUS BEASLEY; SAM BLUE; ANDRE BOWEN;       ) | |
| TARA BOWEN; FELIPE BOYCE; LIONEL BROWN;      ) | |
| TIMOTHY BROWN; GLADYS BURTON;                ) | |
| JEROME BUSSEY; ERSKINE CALDWELL;             ) | |
| AUDREY CARTWRIGHT; LAMBERT CHATMAN;          ) | |
| SHARON CHILDS; RONALD CLARK;                 ) | |
| GARY CLAXTON; JACKIE CONLEY;                 ) | |
| ROBERT COVINGTON; TONY COX;                  ) | |
| EDDIE CRAFT; DONALD CUMMINGS;                ) | |
| GLYNETHA DAVIS; CLEAVEN FOSTER;              ) | |
| DRESSELL FOX; DELINA FRANKLIN;               ) | CASE NO: _____ |
| JAMES GEORGE; MARVIN GLEAVES;                ) | |
| GUYLON GREER; THOMAS GRIFFIN;                ) | |
| KELVIN HAILEY; LINDA HARRIS-GREGORY;         ) | JUDGE: _____ |
| DARRYL HARRISON; GODFREY HOWARD;             ) | |
| NINA IRVIN; OSCAR IRVIN; GEORGE JACKSON;     ) | JURY DEMANDED |
| KENNETH JEFFERSON; ANGELO JENNINGS;          ) | |
| FRANKIE JOHNSON; BRIAN JONES;                ) | |
| CYNTHIA JONES; JOSEPHINE JONES;              ) | |
| LAVERN JONES; TOMMIE JONES;                  ) | |
| SHARON KELLY; OUITA KNOWLTON;                ) | |
| MARIO KNOX; ELGIN LEE; CRAIG LITTLES;        ) | |
| CARLOS LOVE; JAMES LYNN;                     ) | |
| RONALD MARSHALL; WILLIE MATHENA;             ) | |
| DAWN MICKENS; WILLIE MILES;                  ) | |
| STACY MILLIGAN; MARCUS MITCHELL;             ) | |
| CHARLES MOORE; NEWTON MORGAN;                ) | |
| ANTHONY MORRIS; MARIO NETTLES;               ) | |
| LARRY ORANGE; KEITH PAUL;                    ) | |
| ROMAURO PERRY; MICHAEL PIERCE;               ) | |
| CATHY PIRTLE; CEZAR POLK;                    ) | |
| DELBERT POLK; SAMPSON PRYOR;                 ) | |
| KEITH ROGERS; LEO ROSMON;                    ) | |
| ROSEMARY SMALL; COREY SMITH;                 ) | |
| LYNN SMITH; REGINA SMITH;                    ) | |
| WILLIAM TAYLOR; REGINALD TITUS;              ) | |
| ROOSEVELT TWILLEY; CORNELIUS VAIL;           ) | |
| MICHAEL VINSON; LEE WALKER;                  ) | |
| JIMMY WARREN; TRACEY WASHINGTON;             ) | |
| MARY WEBB; FERNANDEZ WEEAMS;                 ) | |
| ROGER WHEELER; SAMMY WHITNEY;                ) | |

| | |
|---|---|
| DERRICK WILLIAMS; JAMES WOODS; KENNETH WOODS; AND JEWELL YANCEY; | ) ) ) |
| PLAINTIFFS, | ) ) |
| VS. | ) ) ) |
| CITY OF MEMPHIS, | ) ) |
| DEFENDANTS. | ) ) ) |

## COMPLAINT

**COMES NOW**, Plaintiffs CHESTER ALDRIDGE; MELVIN AMERSON; RODNEY ASKEW; JAMES AUSTIN; JULIUS BEASLEY; SAM BLUE; ANDRE BOWEN; TARA BOWEN; FELIPE BOYCE; LIONEL BROWN; TIMOTHY BROWN; GLADYS BURTON; JEROME BUSSEY; ERSKINE CALDWELL; AUDREY CARTWRIGHT; LAMBERT CHATMAN; SHARON CHILDS; RONALD CLARK; GARY CLAXTON; JACKIE CONLEY; ROBERT COVINGTON; TONY COX; EDDIE CRAFT; DONALD CUMMINGS; GLYNETHA DAVIS; CLEAVEN FOSTER; DRESSELL FOX; DELINDA FRANKLIN; JAMES GEORGE; MARVIN GLEAVES; GUYLON GREER; THOMAS GRIFFIN; KELVIN HAILEY; LINDA HARRIS-GREGORY; DARRYL HARRISON;GODFREY HOWARD; NINA IRVIN; OSCAR IRVIN; GEORGE JACKSON; KENNETH JEFFERSON; ANGELO JENNINGS; FRANKIE JOHNSON; BRIAN JONES; CYNTHIA JONES; JOSEPHINE JONES; LAVERN JONES; TOMMIE JONES; SHARON KELLY; OUITA KNOWLTON; MARIO KNOX; ELGIN LEE; CRAIG LITTLES; CARLOS LOVE; JAMES LYNN; RONALD MARSHALL; WILLIE MATHENA; DAWN MICKENS; WILLIE MILES; STACY MILLIGAN; MARCUS MITCHELL; CHARLES MOORE; NEWTON MORGAN; ANTHONY MORRIS; MARIO NETTLES; LARRY ORANGE; KEITH PAUL; ROMAURO

PERRY; MICHAEL PIERCE; CATHY PIRTLE; CEZAR POLK; DELBERT POLK; SAMPSON PRYOR; KEITH ROGERS; LEO ROSMON; ROSEMARY SMALL; COREY SMITH; LYNN SMITH; REGINA SMITH; WILLIAM TAYLOR; REGINALD TITUS; ROOSEVELT TWILLEY; CORNELIUS VAIL; MICHAEL VINSON; LEE WALKER; JIMMY WARREN; TRACEY WASHINGTON; MARY WEBB; FERNANDEZ WEEAMS; ROGER WHEELER; SAMMIE WHITNEY; DERRICK WILLIAMS; JAMES WOODS; KENNETH WOODS; AND JEWELL YANCEY, by and through their attorney of record, Dr. Bede Anyanwu, sue defendant City of Memphis seeking declaratory judgment, compensatory damages, and other legal and equitable remedies.

## I.  CAUSE OF ACTION

This cause of action arises under the Fourteenth Amendment of the United States Constitution and Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq*.

## II. COURT'S JURISDICTION

This Court has jurisdiction over the claims arising under the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1981 and 1983, pursuant to 28 U.S.C.  § 1331 and 1343.

## III. PARTIES

3.	The above named Plaintiffs are African American citizens of the United States of America, and at all times material and pertinent herein were employed by the Defendant, City of Memphis, as police officers.

4. At all times material and pertinent hereto, Defendant, City of Memphis, (hereinafter referred to as the "City") is existing pursuant to the laws of Tennessee, and is a municipal corporation duly organized and charted under the laws of the State of Tennessee, and within the County of Shelby.

IV. COUNT ONE

VIOLATIONS OF TITLE VII THE CIVIL RIGHTS ACT OF 1964, AS AMENDED CODIFIED AT 42 U.S.C. § 2000e et seq., THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

5. Plaintiffs adopt and allege the following:

6. For over 28 years, Defendant had been obligated by federal and local laws to use job related promotion selection procedures.

7. In 1974, the United States Department of Justice brought an action against the City of Memphis alleging that the City had discriminated against African Americans and females, in part, by failing to use valid promotion tests which predict successful job performance.

8. In 1975, the Afro- American Police Association filed suit against the Defendant alleging that Defendant unlawfully discriminated against blacks in the 1973 promotion process to the ranks of sergeant, lieutenant, and captain based on the results of tests which were not validated as being job-related.

9. In March of 1979, Defendant entered into a Consent Decree in settlement of the Afro- American Police Association lawsuit.  In this Decree, the City admitted that "historically blacks have been excluded from or limited in hiring and promotional opportunities within its police department."(   PL's Trial Ex. 57, Stipulations of Facts 1, 1.). Defendant represented to

the parties and to the Court that it was in the process of developing valid job-related promotion procedures and such would be in place within two to three years.

10. From 1979 to 1987, Defendant failed to develop and implement valid job-related promotion procedures for several promotion processes it executed.

11. In 1988 and 1989, Defendant intentionally discriminated against non-minority candidates for promotion to sergeant. Sergeant's promotion tests were not job-related, nor did the Defendant attempt to validate the promotion tests ad being job related.

12. In the 1988 and 1989 promotion process, there were numerous errors made in the grading of the promotion tests resulting in the denial of promotions to non- minorities, who would have been promoted if the promotion tests had been graded correctly.

13. In 1991, the Defendant conducted a promotion process to the rank of lieutenant and intentionally discriminated against non- minorities. In addition, Defendant mis-graded the promotion tests resulting in the denial of promotions to non-minorities who would have been promoted if the promotion tests had been graded correctly. The promotion process was not job related nor did Defendant attempt to validate the selection procedures as being job related.

14. In March, 1992, the Defendant began another promotion process to the rank of sergeant. The proposed promotion process was not job related and Defendant did not attempt to validate the promotion tests as being job related. Prior to the administration of the written test, Defendant released the test and answers to select African American candidates. When this circumstance was revealed, Defendant canceled the written test. Defendant conducted an investigation into the "leak" of the test; however, it was unable to determine the source of the leak.

15.     In 1994, the Sixth Circuit Court of Appeals rendered a decision in one of the City's many legal battles brought against them for discrimination against African Americans and other minorities. In its decision the Court noted that, "incredibly, the City continues to make police and fire department promotions according to procedures that have not been validated." <u>Aiken v. City of Memphis</u>, 37 F. 3d. (6th Cir. 1994).

16.     In 1996, the Defendant conducted another promotion process to the rank of sergeant. The 1996 promotion process deviated from previous processes in that it reduced the emphasis on the written test and abandoned the use of cut-off scores. The reduced emphasis on the written knowledge test was based on findings that minorities tend to perform less well on such tests. The elimination of the cut-off score was based on the determination that the use of such a cutoff would further exacerbate the disparate impact on African Americans.

17.     During the 1996 testing process, Defendant was informed that certain African American candidates had been given the test materials. However, Defendant ignored the information and promoted those candidates who were suspected of receiving unauthorized assistance. Defendant again mis-graded the promotion tests.

18.     On or about March 20, 2000, the Defendant issued an information bulletin regarding the promotion process to the rank of sergeant. The bulletin delineated that the process would consist of to parts, (1) written examination and (2) the practical application examination.

19. Thereafter, the Defendant issued a study guide indicating the value of each portion of the promotion process. The written test would account for 20% of the total score, the video-based practical exercise would account for 50% of the total score, performance evaluations for the previous two years would count for 20% of the total score, and seniority points would

account for 10% of the total score. Promotion would then be based on the rank order of the total scores.

20. After the written examination was administered and scored, the Defendant lowered the cutoff score to 66 once it was determined that using a cutoff score of 70 had an adverse impact on African American candidates.

21. The Defendant eliminated five (5) questions from the one hundred (100) question test once the Defendant's test maker, Dr. Mark Jones, publicly stated some of the written test questions were "too hard". However, the cutoff scores were not justified by the job analysis and/or a validity study.

22. Candidates who did not meet the minimum score of 66 did not proceed to the next level of the promotion process, which was the video-based practical test.

23. The practical test and other test materials were purposively given to select African American candidates before the promotion tests began by high ranking police officials and/or other officers, agents, or employees of the Defendant. The test materials were then distributed to other African Americans candidates as "study materials"

24. The then, Police Director, Walter Crews, and other police administrators were notified that the practical test had been compromised before and during the administration of the practical test.  Director Crews initially denied that the test had been compromised and allowed the practical test to be administered or continued to be administered to the candidates.

25. After members of the news media produced copies of the test materials, the Defendant admitted that the practical test had been compromised. However, the majority of the candidates had already completed the compromised practical test.

26. The defendant capriciously increased the value of the written test to 45% of the total score and the performance evaluations to 45% of the total score instead of replacing the compromised practical test with a device that would measure job-related skills. The written test and the performance evaluations were combined with the seniority points to create a rank ordered list of promotion scores. The weightings of these three components were arbitrary and had no relationship whatsoever to job content, the relative importance of the knowledge, skills and abilities measured, or any other meaningful job-related criteria., The promotion tests failed to measure those aspects of performance which differentiate among levels of job performance; therefore, it was not valid for use in promotions based on the rank order of score. Nor can Defendant show by job analysis or otherwise that a higher promotion test score is likely to result in better job performance.

27. The Defendant made no attempt to substitute any other test or comparable device to measure the large number of important duties and responsibilities that the practical test was intended to measure, and were incapable of being measured by the written test, the performance evaluations or by seniority.

28. Plaintiffs were qualified for promotion to the rank of sergeant; despite their qualifications the Defendant did not select them for promotion to the rank of sergeant based on their race, African American or other member of minorities. However, similarly situated officers with the same or lesser qualifications were selected for promotion and subsequently obtained the rank of lieutenant or higher.

29. Two patrol officers, who successfully competed for promotion to sergeant in the 2000 promotion process, filed an employment discrimination action on July 11, 2000, alleging that the elimination of the practical exercise test from consideration in the promotion decision

had a disparate impact on racial minorities in the Memphis Police Department and amounted to intentional unlawful discrimination by the City. Which lead to the first Johnson case in <u>Johnson v. City of Memphis</u>, Case No. 00-2608 DP. ("Johnson I")

30.     On September 12, 2000, the complaint was amended, adding fifty additional plaintiffs. On January 11, 2001 the "Johnson I" plaintiffs, filed a compliant with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination by the City in connection with their promotions to the rank of sergeant. These plaintiffs received a "Right to Sue Letter" from the EEOC on July 27, 2001. The "Johnson I" case was amended a second time to add a claim that Defendant had violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §.2000E-2 et seq.

31.     On June 25, 2001, the City ultimately conceded that the 2000 process was invalid and the Court entered partial summary judgment in favor of the "Johnson I" plaintiffs. The Court further declared the 2000 process to be invalid on grounds that it violated § 250.1 of the City Charter and City and City Ordinance§ 9-3.

32.     On July 2, 2001, the Court granted the City leave to begin a new promotional process in September 2001. Defendant notified sergeants who had been promoted to sergeant in the 2000 process that their promotions were rescinded and that they would be required to compete in the upcoming promotion process.

33.     On September 7, 2001, the Tennessee Chancery Court in Memphis enjoined the City from demoting and/or reducing the pay officers who had been promoted to sergeant based on the invalid 2000 test until promotions were made from the 2002 sergeants' promotion process. <u>Green v. City of Memphis</u>, No. CH-01-156601 (Ch. Ct. Tenn. August 21, 2001).

34. The City allegedly contracted with one Jeanneret and Associates (J&A) to design the so–called new officer promotion process tests.

35. In 2002, the City administered a multi- faceted test which presumed to assess a broad range of job skills. Components included an investigative logic test, a job knowledge test, an application of knowledge test, a grammar and clarity test, and an oral response test. The City administered the new process September 27-29, 2001, and scoring of the tests was completed in the fall of 2002.  The process resulted in substantial adverse impact on minority applicants. Out of two-hundred seventy-four (274) African Americans candidates and two-hundred forty (240) whites, a disproportionate number of African Americans were selected for promotion, eighty-six (86) total compared to one-hundred seventy-six (176) whites.

36. On April 23, 2003, the Chancery Court dissolved the preliminary injunction in Green. This allowed the City to remove from the rank of sergeant those officers who had been promoted to sergeant as a result of the invalid 2000 test, but who failed in the 2002 test to rank at the level required for promotion to sergeant.

37. On September 19, 2003, the City issued an information bulletin announcing the 2003 process fro promotion from sergeant to lieutenant. Among other eligibility requirements, candidates for the lieutenant positions were required to have served at least two continuous years in sergeant's grade by October 20, 2003.

38. On October 2, 2003, two of the "Johnson I" plaintiffs who had been promoted to sergeant as a result of the 2002 process filed a complaint for a preliminary injunction against the Memphis Police Department. After applying to take the lieutenant promotion exam, the plaintiff's had received letters informing them that they were ineligible to take the exam because they did not have two years of service as a sergeant. Plaintiffs requested that the Court

issue injunctive relief regarding all plaintiffs in the Johnson I case mandating that the City either (1) allow all plaintiffs to take the lieutenant's promotion test on December 4-6, 2003;(2) set aside fifty-two (52) vacant lieutenant' promotion process until this case was concluded. The Court granted plaintiff's motion in part by ordering the city to hold open fifty-two vacant (52) lieutenant positions until the case was concluded.

39.     On January 9, 2004, the fifteen African American "Johnson I" plaintiffs who were not promoted to sergeant challenged the 2002 process in a separate suit on grounds similar to those asserted in "Johnson I". Contemporaneously with this "Johnson II" filing, a separate group of 35 African American plaintiff filed (the "Billingsley' case) asserting the same claims alleged in "Johnson II".

40.     On February 27, 2004, the Johnson I complaint was amended for the third time to include an allegation of intentional discrimination against the African American plaintiffs for failing to promote them to sergeant in the 2002 process in violation of 42 U.S.C. § 1981 and Title VII. Plaintiffs also added a claim that the City was negligent in the development and implementation of the 2002 promotion process.

41.     On October 28, 2004, the Court entered partial summary judgment on the Title VII disparate impact claims of the "Johnson II" and "Billingsley" plaintiffs regarding the 2002 process, finding that the plaintiffs had established a *prima facie* case of disparate impact, thus shifting to the Defendant the burden of showing that the process was job-related.

42.     On November 17, 2004, recognizing that three cases shared common questions of law and fact, the Court granted the City's motion to consolidate the "Johnson I", " Johnson II" and "Billingsley" cases in the interest of efficiency and judicial economy.

43. On February 4, 2005, the Court entered summary judgment in favor of "Johnson I" Plaintiff on their Title VII disparate impact claim as to the 2000 promotion process on grounds that the City had not offered any proof that the written test was job-related or a business necessity.

44. The Court found that while the 2002 process was arguably more sophisticated than its predecessors, it suffered from a grossly disproportionate impact on minority candidates. The Court found merit that all three plaintiffs ("Johnson I", "Johnson II", and "Billingsley") met their burden of showing "that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship." Albemarle Paper Co. v. Moody, 442 U.S. 405 (1974). Accordingly, the Court found for minority plaintiffs on their Title VII disparate impact claim as to the 2002 process.

45. The Court also found the City to be in violation of the City Charter and Ordinance in its administration of the of the 2000 process.

46. The purpose of Title VII "is to make a person whole for injuries suffered on account of unlawful employment discrimination. "Albemarle", 422 U.S. at 418. The Court found that an equitable remedy would be to compensate all plaintiffs such that a certain parity of treatment with those already promoted is achieved. This approach involved back pay, seniority credit and promotion.

47. A remedy was awarded to all plaintiffs because while injury occurred, individual injury could not be assessed. This remedial scheme ensures that no one deserving promotion was denied promotion because of an illegally discriminatory process.

48.     The Plaintiffs in this case seek the same relief and remedies as the plaintiffs in the aforementioned cases, "Johnson I", "Johnson II" and "Billingsley", as they are similarly situated, and the discriminatory practices have not been remedied.

49.     The Plaintiffs exhausted all administrative remedies available to them prior to seeking relief from this Court. Some of the remedies sought were seeking assistance from the police union, The Memphis Police Association, a letter to the City Major, Willie Herenton, and filing individual complaints with the EEOC. Each Plaintiff subsequently received a Right to Sue Letter.

50.     All of the Plaintiffs' efforts fell on deaf ears. The Defendant failed to recognize the grievance filed by the Memphis Police Association, on behalf of the Plaintiff, as being similar to the 47 Plaintiffs who were promoted as a result of the Federal Court ruling in the "Johnson" case.

51.     After an investigation by the EEOC, the Plaintiffs have each received a Right to Sue Letter. Each of the letters are attached.

52.     Over the past twenty-eight years and continuing through the 2002 promotion process, Defendant had pursued a policy and practice of discrimination on the bases of race in its police promotion procedures by; (1) intentionally refusing to develop and utilize promotion procedures that were validated as being job related, (2)"leaking" test materials to selected African American candidates, and (3) mis-grading the promotion tests such that non-minorities are denied a promotion, thereby making it appear the promotion process had no adverse impact. Throughout these years, Defendant has intentionally failed to develop and utilize promotion procedures validated as being job related and has unfairly administered the promotion tests

using the test results to unlawfully discriminate against minorities or non-minorities when it suited Defendant's needs.

53. Plaintiffs allege that Defendant has known since 1974 and has previously been warned that the use of its written test has tendencies toward more adverse impact on minorities than race-neutral practical exercises. Despite this knowledge, defendant did not take reasonable action to control for adverse impact in the development of the written test, as it had previously done in 1996, when Defendant did not use a cutoff score for the written test. The Plaintiffs make for forgoing allegations:

54. Plaintiffs allege that the City had previously conceded that the 2000 promotion process was invalid.

55. Plaintiffs allege that the Court found Defendant had violated the City and Charter Ordinances in its administration of the 2000 promotion process.

56. Plaintiffs allege that the Court found for the minority plaintiffs in the "Johnson I" case on their Title VII disparate impact claim as to the 2000 promotion process.

57. Plaintiffs allege that the Court found for the minority Plaintiffs on their Title VII disparate impact claim as to the 2002 process in the consolidated cases of "Johnson I", "Johnson II", and "Billingsley."

58. Plaintiffs allege they are similarly situated and affected, as the plaintiffs in the aforementioned cases by the discriminatory practices of the Defendant regarding the 2000 and the 2002 promotion processes.

59. Plaintiffs allege as a direct and proximate cause of this intentional discrimination, all of the plaintiffs herein have been injured by Defendant's unreasonable refusal to acknowledge their being disadvantaged by the 2000 and 2002 promotion processes.

60.     Plaintiffs allege that the Defendant is unlawfully denying the African American Plaintiffs a promotion based on a selection process which has been declared invalid.  Defendant has intentionally discriminated against the minority Plaintiffs on the bases of their race by refusing to acknowledge that they are similarly affected as the 47 Plaintiffs promoted as a result of a Federal Court Order.

**WHEREFORE PREMISES CONSIDERED,** plaintiffs pray that this court:

1.      Order the City of Memphis to promote all minority Plaintiffs who have not been promoted to the rank of sergeant within thirty (30) days after the completion of the hearing.

2.      Order the City of Memphis to pay Plaintiffs promoted back pay commensurate with their having assumed the sergeant rank on the date of their first denial of promotion under either the 2000 or 2002 process within sixty (60) days with interest.

3.      Order the City to amend the employee records of all minority Plaintiffs to reflect seniority credit commensurate with their having assumed the sergeant rank on the date of their first denial of promotion under either the 2000 or 2002 process within thirty (30) days.

4.      That Defendant be enjoined from retaliating against Plaintiffs on account of their bringing this lawsuit.

5.      That Defendant be required to pay all costs for and expenses incurred by the Plaintiffs in presenting this case, including but not limited to, attorney's fees, court costs, expert witness fees, and other fees the Court deem just and proper pursuant to 42 U.S.C. § 1988 and other applicable statues and laws.

6.      That the Court award Plaintiffs other relief the Court deems just and proper.

Respectfully submitted,

s/ Bede Anyanwu
Dr. Bede Anyanwu (#24293)
Attorney for Plaintiffs
The Law Firm of Dr. Bede Anyanwu
50 Stonebridge Blvd. Ste. 8
Jackson, TN  38305
731-512-0176